IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BERNARD S. LEVI, | : | CIVIL ACTION NO. **1:CV-05-1533** |
| | : | |
| Petitioner | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| RONNIE HOLT, WARDEN, | : | |
| | : | |
| | : | |
| Respondent | : | |

**REPORT AND RECOMMENDATION**

**I. Background.**

On August 1, 2005, the Petitioner, Bernard S. Levi, an inmate at the Federal Correctional

Institution at Schuylkill ("FCI-Schuylkill"), filed a Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. §2241 with an attached memorandum.  (Doc. 1).[1]  The Petitioner filed an application

---

[1] 28 U.S.C. § 2241(c)(3) provides that "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . (3) [h]e is in custody in violation of the Constitution or laws of the United States . . ."  Petitioner claims in part that he lost too many good conduct days as a disciplinary sanction, and he seeks the removal and expungement of the sanctions including  restoration of all of his good time days (i.e. 27 days).  Thus, Petitioner has properly brought his claims affecting the length of his confinement in a habeas petition.  *See Nelson v. Campbell*, ____ U.S. ___, 124 S.Ct. 2117, 2124 (2004).  However, as discussed below, Petitioner 's injunction motion request (Doc. 34) to have the court order Mr. Feger, the husband of the prison staff member whose complaints were the bases for two "written sexual incident reports" against Petitioner, reassigned from Petitioner's living quarter, are not core habeas claims cognizable in his Habeas Corpus Petition.

Further, we agree with Respondent (Doc. 14, pp. 9-11) that Petitioner's Habeas Petition to the extent that it challenges conditions of confinement, including Petitioner's claim that he is being held in the SHU too long as a "long term [SHU] inmate even though his segregation time has expired, and that his mail is delayed, that he receives inadequate showers, and that his privileges are restricted (Doc. 7), does not raise core habeas claims and they are not proper claims for a 2241 habeas petition.

for leave to proceed *in forma pauperis*. (Doc. 3).  On August , 2005, Petitioner filed a Motion to Amend his Habeas Petition which the court granted.  (Docs. 7 & 10).  We directed service of the Petition and amendment (Docs. 1 & 7) on Respondent.[2]

In the original Petition and amendment, Petitioner essentially claims as follows: his prison disciplinary hearing was in violation of his Fifth Amendment due process rights; the sanctions imposed by the DHO were retaliatory and excessive; illegal detainment in the SHU after the expiration of his disciplinary sanctions due to retaliation and harassment; and the evidence against him at his disciplinary hearing was insufficient to find him guilty of the charge in the incident report (*i.e.* engaging in a sexual act) and he was  charged with the wrong offense, (*i.e.* a 205 Code Offense).  (Doc. 1, p. 6, and attached memo, pp. 2-10, Doc. 7, pp. 1-6).[3]

---

[2]Petitioner names as the Respondent  the Warden at FCI-Schuylkill, Ronnie Holt, who is the proper Respondent.  28 U.S.C. Sections 2242 & 2243.

[3]Petitioner argues, in part, that he should not have been charged with a Code 300 series incident report for indecent exposure since he never exposed himself to the complainant, Mrs. Feger, and that he never looked at her with sexual gestures or threats and should not have received a Code 205 series incident report since he was fully clothed without exposing himself and without making advances toward the complainant.  (Doc. 1, memo at pp. 3-4).  Petitioner claims that Code 300 series incident reports are given to inmates who expose themselves to female staff or who are caught in homosexual acts.  (*Id*., p. 4).  Petitioner claims that he did neither in his case.  Thus, he claims that he should have been charged with a low moderate category Code 499  series offense for conduct which disrupts or interferes with prison security or the orderly running of the prison.  (*Id*., pp. 4, 9).  Petitioner also claims that the complainant had a history of making false sexual allegations against minority inmates, and that Respondent wanted a greater punishment for him since the DHO and prison officials at FCI-Schuylkill were friends of the complainant's (Mrs. Feger) husband who is an officer at the prison.  (*Id*., p. 4).
We also note that Petitioner filed an almost identical habeas petition previously with the Court making essentially the same challenges to a similar December 2004 incident report in which Mrs. Feger was the complainant, and to his disciplinary proceedings against him.  *See* Civil No. 05-1092, M.D. Pa.  Petitioner's previous habeas petition was denied by the Court.

The Petition was served on the Respondent, and his Response with attached Exhibits was filed on August 29, 2005.  (Doc. 14).  Petitioner filed a Traverse with exhibits on September 7, 2005.  (Docs. 16 & 17). The Petition is now ripe for disposition.[4]

## II. Habeas Claims.

In the instant Habeas Corpus Petition, as well as the Traverse, Petitioner challenges his disciplinary hearing conviction on the March 7, 2005 incident report charging him with engaging in a sexual act (Doc. 14, Ex. B), as well as his disciplinary sentence, as violative of his Fifth Amendment due process rights on the grounds that he was charged with and found guilty of conduct that he did not commit, namely engaging in a sexual act (Offense Code 205).  Petitioner's argument is based on the facts that he was not caught in a sexual act with another inmate, he did not expose himself, and he did not make a sexual gesture or advance towards the complainant. (Doc. 1, memo, p. 3-4).  Petitioner requests the Court to expunge his disciplinary sanction imposed for his guilty finding of engaging in a sexual act since he claims he was charged with the wrong offense code, and to order a new disciplinary hearing under a 499 series offense for disruptive conduct. (Doc. 16, p. 1).  As mentioned, Petitioner bases his request on his assertion that he did not expose himself and he was fully clothed without dropping his pants down, he did not look at Mrs. Feger with sexual gestures, and he was not involved with another inmate in a sexual act. (Doc.

---

[4]As noted, Petitioner previously filed a Habeas Petition with this Court, Civil No. 05-1092, M.D. Pa., in which he challenges an incident report dated December 21, 2004 charging him with engaging in a sexual act, based, for the most part, on the same grounds as presented in his instant Habeas Petition.  Petitioner's first Habeas Petitioner was denied by the Court.

1, memo, pp. 3-4).

Petitioner claims that other inmates are only charged with Offense Code 205 when they are caught engaging in a sexual act with another inmate. (*Id*.). Petitioner also claims that he did not receive a fair disciplinary hearing since he was fully clothed at the time of the incident, doing legal research in the law library with several of his friends and surrounded by numerous other inmates who did not witness him engaged in any sexual act in the law library on March 7, 2005. Petitioner asserts that he did not commit a sexual act against Mrs. Feger. Petitioner further states as follows:

> In her report Mrs. Feger noted she observed me and saw my penis inside my pants and that I was supposedly to have had my hand on the outside of my pants. This incident report is a duplicate version of the December 21, 2004 incident report that's vindictive and retaliatory in nature because of my complaints against staff.

(Doc. 16, p. 2).

Thus, Petitioner argues that there was insufficient evidence to support the charge he was found guilty of committing, Code 205 engaging in a sexual act. The Petitioner also claims that the DHO sanctions, including 30 days in disciplinary segregation[5], one year visit restrictions, and 27 days loss of good time were excessive and not proportionate to the act committed. (*Id*. & Doc. 1, memo, pp. 3-4).[6]

---

[5]The record reveals that Petitioner actually received 45 days disciplinary segregation (Doc. 14, Ex. C, p. 3).

[6]Respondent concedes that Petitioner has exhausted his administrative remedies with respect to his DHO due process claim and excessive sanctions claim. (Doc. 14, p. 2). Petitioner also shows exhaustion through his exhibits filed with his traverse, Doc. 17.

Specifically, the Petitioner's claims at issue are that there was insufficient evidence to support the charge (Code 205) of which he was found guilty by the Disciplinary Hearing Officer ("DHO") and that he was deprived of his due process rights.  Petitioner argues that there was no evidence that he exposed himself, had sex with another inmate and removed any of his clothing.  Thus, he contends that he could not have been found guilty of Code 205, engaging in a sexual act. Petitioner states that it was undisputed that he never removed his clothing (sweat pants), that he did not have any holes in his pants and that Mrs. Feger did not see his penis.  (Doc. 16, p. 2). Petitioner also states that the DHO imposed excessive sanctions and that he received too severe of a punishment since he was charged with the wrong offense code, and since there was not sufficient evidence to find him guilty of engaging in a sexual act in light of the undisputed facts that he had his pants on, he did not have his hands in his pants and Mrs. Feger did not see his penis. (Doc. 1, memo, pp. 4-6).

Petitioner claims that he was charged with the more severe 200 series offense instead of an appropriate 300 series offense because of retaliation for his complaints against prison staff.  (*Id.*, p. 6).[7]  Thus, Petitioner contends that he did not receive proper due process rights since he was charged with the wrong offense[8] and that there was insufficient evidence presented as his

_____

[7]As stated above, to the extent that Petitioner challenges his classification by prison staff as a sex offender (Doc. 1, memo, pp. 7-8 & Doc. 16, p. 9) and claims that he has accordingly been given various restrictions, including continued confinement in the SHU, these claims are not proper habeas claims and should be dismissed.

[8]In his traverse to his Habeas Petition, Petitioner repeats that there was not sufficient evidence to support a Code 205 finding of guilt.  He states that he did not commit a Code 205 offense, a severe charge "only imposed on inmates caught in homosexual acts", since he never

disciplinary hearing to support the charge of which he was convicted.   In his Petition, Petitioner also challenges the sanctions imposed by the DHO, which he claims were excessive.   The Petitioner indicates the relief he seeks in his Habeas Petition as expungement of the DHO's decision and the incident report of March 7, 2005, a new disciplinary hearing under a lower code offense,  and the restoration of all good time credits and all privileges which were lost as sanctions.   Petitioner seeks the reduction of the charged offense code to a lesser code and to expunge the excessive sanctions imposed by the DHO.[9]   He states that he was sanctioned to 30 days disciplinary segregation, loss of various privileges for up to one year and 27 days loss of good conduct time, which were excessive, and that the sanctions imposed by the DHO were  unreasonable and not proportionate to the act committed.[10]   Petitioner is seeking, as mentioned, the removal of the disciplinary conviction and sentence from his record, as well as the return of his lost good conduct time and lost

---

exposed himself, lowered his pants or had his hands inside his pants.  (Doc. 16, p. 9).   As stated, Petitioner claims that he was charged with the more severe offense due to retaliation for his complaints against prison staff.

[9]As an attachment to his Traverse, Petitioner includes the offense code he was charged with as well as moderate and low moderate offenses which he claims were more suitable to his charged conduct than the high severe offense with which he was charged.  (Doc. 17, Exhibits).

[10]Petitioner's challenge to his disciplinary conviction and resulting punishment affect the length of his sentence, and as noted above, a habeas corpus petition is the proper remedy.  *See Portley-El v. Brill*, 288 F.3d 1063 (8th Cir. 2002).  On the contrary, Petitioner's other stated habeas claims challenging conditions of his confinement such as continued SHU placement and the conditions in the SHU and restrictions after being placed in the SHU, as well as his claims in his second Injunction Motion (Doc. 34) that he may be subject to improper searches and confiscation by Mr. Feger's assignment to his living quarters, are not core habeas claims and are cognizable only in a civil rights action.

privileges.  (Doc. 1, memo p. 10).[11]

## III. Injunction Motion.

On December 30, 2005, Petitioner filed a second Motion for Preliminary Injunction and Temporary Restraining Order.  (Doc. 34).[12]  As noted above, Petitioner seeks the court to order Mr. Feger reassigned out of Petitioner's living quarter (Unit 3 A).  No briefs with respect to Petitioner's second Injunction Motion have been filed to date.  Petitioner claims that several inmates told him that Mr. Feger made a staement that "Mr. Levi won't be coming on this compound while I'm an officer here."  (Doc. 34, p. 1).  Petitioner claims that in light of this alleged statement, which is clearly hearsay and unsubstantiated, Mr. Feger is in a position to possibly sort through his legal material and may remove documents.  There is no claim and no evidence submitted by Petitioner that Mr. Feger has, in fact, searched his cell or gone through Petitioner's legal material and removed documents.  Further, there is no evidence that Mr. Feger made any threat to Petitioner.  Petitioner's injunction request is based entirely on pure speculation.  As such, it should be denied.

The  injury or threat of injury to the party seeking an injunction must be real and immediate.  See Golden v. Zwickler, 394 U.S. 103, 109-110 (1969) (to show an actual controversy, facts must be alleged of "sufficient immediacy and reality").  Petitioner fails to show that he has a present

---

[11]In his Traverse, Petitioner reiterates his stated requests for relief, which include requests that the March 7, 2005 incident report be expunged, that his 27 days of vested good conduct time be reinstated, and that he receive a new disciplinary hearing under a less severe offense code.  (Doc. 16).

[12] Petitioner's first Injunction Motion filed in this case was denied by the court.   (Docs. 19, 23 and 27).

injury or threat of injury attributable to Mr. Feger, since he has not been subject to any cell search or documnet removal by Mr. Feger.  In fact, Petitioner has not even claimed that he is in danger of irreparable harm or an injury by Mr. Feger.  Based on the facts alleged by the Petitioner in his Motion, under all of the circumstances, we do not find that there is a "sufficient immediacy and reality" to warrant the issuance of injunctive relief.  *Id.*

Since we find that the Plaintiff is not likely to suffer irreparable harm by denying his injunction request, as he is no proven immediate danger of sustaining a real injury and he has not shown that he is in imminent harm, we shall recommend that his Motion for Injunctive Relief (Doc. 34) be denied.  *See In Re Arthur Treacher's Franchise Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.").

We also find that Petitioner's Injunction Motion claims, as well as his claims related to the conditions of confinement in the SHU and his extended confinement in the SHU beyond his segregation time (Doc. 7) are not related to his present habeas claims, and they are not properly raised in a § 2241 habeas petition.  Since Petitioner's injunction request to remove Mr. Feger from his living quarters and Petitioner's habeas claims regarding the legality of his continued SHU confinement and the conditions in the SHU, do not relate to a speedier release from confinement and are not at the core of a habeas petition.  As such, the injunction claims and the stated habeas claims are cognizable as *Bivens* claims under 28 U.S.C. § 1331.  *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1248 (2005); *Carson v. Johnson*, 112 F. 3d 818, 820-821 (5th Cir. 1997) ("If a favorable determination ... would not automatically entitle [Petitioner] to accelerated release, the proper

8

vehicle is a § 1983 [civil rights] suit.") (citations omitted).[13]

Thus, we shall recommend that Petitioner's second Motion for Preliminary Injunction and Temporary Restraining Order (Doc. 34) be denied.   We shall also recommend that Petitioner's amended habeas claims  regarding the legality of his continued SHU confinement  and the conditions in the SHU (Doc. 7) be dismissed since, as Respondent correctly argues (Doc. 14, pp. 9-11), they are not cognizable in a 2241 habeas petition.

## IV. Habeas Discussion.

### 1. Exhaustion.

It is well-settled that before a prisoner can bring a habeas petition under 28 U.S.C. § 2241, administrative remedies must be exhausted.  *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996). The Petitioner indicates in his Petition, as well as with his attached exhibits to his Traverse (Doc. 17), that he has exhausted all of his available administrative remedies regarding his challenge to his disciplinary hearing and sanctions, and that the BOP upheld the disciplinary conviction and the sanctions imposed.  The Respondent concedes that exhaustion has occurred in this case. (Doc. 14, p. 2).  Accordingly, we find that Petitioner has exhausted his administrative remedies with respect to his present due process hearing and excessive sanctions claims.

### 2. DHO Claims.

As stated, the Petitioner claims that his March 21, 2005 DHO hearing violated his due process rights because he was found guilty without sufficient evidence, and because he was charged

---

[13]*See also* court decisions attached to Respondent's Response, Doc. 14.

with the wrong offense, *i.e.* engaging in a sexual act, since he had his pants on and did not expose himself.  Petitioner also claims that he requested five (5) inmate witnesses but was only allowed to present three.[14]  Petitioner states that his other two (2) inmate witnesses would have testified that he was fully clothed when sitting in the law library on the day in question.  (Doc. 16, p. 3).  The Petitioner also claims that his rights were violated by the DHO because the DHO imposed sanctions that were excessive under the BOP policy.

With respect to Petitioner's claim that he was denied his two other inmate witnesses, we find no merit to this claim since the evidence presented at the DHO hearing was undisputed that Petitioner had his clothes on, including his sweat pants, at the time of the incident. (Doc. 14, Ex. C, p. 2).   Indeed, Petitioner himself acknowledged that the issues of whether he had his clothes on and exposed his penis were not in dispute.  (Doc. 16, p. 2).  Thus, the proffered testimony of the two additional witnesses that Petitioner was fully clothed would be of no significance.

The Petitioner alleges that on March 7, 2005, while he was incarcerated at FCI-Schuylkill, he was sitting in the law library doing legal research and typing.  He was fully dressed with his sweat pants on, and he did not expose himself.  (Doc. 16, p. 2 & Doc. 1, memo, pp. 3-4).  An investigation was conducted on March 8, 2005, and Petitioner was to remain in the SHU until the matter was referred to the UDC.  (Doc. 14, Ex. B, pp. 1-2).  The Petitioner was thus taken to the SHU and detained there.  He then received a disciplinary incident report (# 1319271) charging

---

[14]As discussed below, of the three inmate witnesses Petitioner was allowed, only one testified since the other two were waived by Petitioner due to inability to locate them at the time of his hearing.

him with engaging in a sexual act, in violation of BOP Code 205.[15]  Petitioner states that the charge

was erroneous since he did not expose himself, he was not involved in a sex act with another

inmate and he was fully clothed at the time.   Petitioner also claims that Mrs. Feger admitted that

he did not expose himself and was fully clothed without putting his hands in his pants, and that Mrs.

Feger had a history of making false sexual allegations against minority inmates.   Petitioner also

claims that Mrs. Feger was coerced by prison staff into making the charge against him in retaliation

for his complaints against staff members and BOP officials.  (Doc. 1, memo pp. 3-4).[16]  Petitioner

---

[15]See Doc. 14, attached Incident Report, Ex. B & Doc. 17, Ex. 9.

[16]In the Incident Report, Mrs. Feger, the reporting staff member stated, in part, as
follows:

Description Of Incident

(Date: 3/07/2004 Time: 7:25 PM staff became aware of incident)
On Monday, March 7, 2005, inmate Levi #00283-016 was in the
education leisure library.  While I was sitting in the education office, I got
an uncomfortable feeling that someone was watching me.  When I
looked out into the library, inmate Levi had himself positioned between
two of the book cases and was watching me.  I saw his hands on his
penis and saw a visibly erect penis protruding from his gray sweat pants.
Levi saw me look out and stopped.  After a few minutes, I looked out
and once again he was in the same position.  He then moved to a
different area of the library a little further back and continued touching
himself as he peered in the office at me.  He then moved to a seat and
periodically stroked his penis while looking towards me in the office.
Inmate Levi is on the sex offender list for performing these acts in
December 2004 toward myself and Mrs. Krakowski.  The operation's
lieutenant was notified.

(Doc. 14, Ex. B, p. 1, Incident Report, ¶ 11.).

does not claim that he had filed any prior complaints or lawsuits against complainant, Mrs. Feger (prison teacher).  Petitioner does claim, without support, that Mrs. Feger had a history of making false sexual allegations against minority inmates.  (Doc. 1, memo, p. 4).  Further, Petitioner does not substantiate his claim that he filed any prior actions against any prison staff and that the staff was retaliating against him.

On March 8, 2005, Petitioner received a copy of the incident report.  (Doc. 14, Ex. B, Incident Report (also marked as Doc. 17, Exhibit 9)).  An investigation ensued.  The incident report was then referred to the Unit Disciplinary Committee ("UDC") for disposition.  (*Id*. at Ex. B, p. 2).  Petitioner was given the opportunity to make a statement during the investigation, and he did so.  (*Id*.).  Petitioner stated in part, "That woman [Mrs. Feger] just hates me.  I have witnesses that will back up my story."(*Id*. @ ¶ 24.).  On March 9, 2005, the UDC referred the Incident Report to the DHO for a hearing.  (Doc. 14, Ex. B, p. 1).  The UDC recommended that if found guilty, the Petitioner should receive "the max sanctions" due to repetitive nature of his act.  (*Id*., ¶ 20.).  Petitioner was advised of all his rights and of the charge on March 8, 2005. (Doc. 14, Ex. B, p. 2, ¶'s 23.-24.).  Petitioner requested three (3) witnesses.  (*Id*., ¶ 25.).[17]

In his Traverse, Petitioner claims that the DHO did not "determine the greater weight of the evidence or follow policy statements to support a finding that petitioner had committed the act charged."  Petitioner implies that this was so since the DHO did not make a proper finding if he

---

[17]As noted above, Petitioner states as part of his due process claims that he requested five (5) inmate witnesses but that two (2) of his witnesses were not allowed to testify.  As discussed, the proffered testimony of the two (2) witnesses who did not testify was simply that Petitioner was fully clothed.  This fact however was not in dispute and was not the basis of the DHO's guilty finding.  Thus, we have found no merit to this due process claim.

was charged with the correct offense. (Doc. 16, p. 3).  However, the Investigation Section on the Incident Report clearly indicated that a factual determination was made as to the appropriateness of the charge made against Petitioner based on his alleged conduct. (Doc. 14, Ex. B, p. 2, Part III). Thus, we find no merit to this claim of Petitioner.

On March 21, 2005, Petitioner had his disciplinary hearing before the DHO.  (*Id.*, Ex. C, p. 1).  Petitioner waived his right to a staff representative.  (*Id.*).  Petitioner denied the charges and made the following statement, in part, "I have never exposed myself.  I would never do this.  She has a vendetta against me. ...  How can I have engaged in a sexual act while fully clothed?  I never stared at her." (*Id.* at Section III.).  Petitioner also provided a one-page handwritten statement. (Doc. 17, Ex. 2).   No procedural issues were noted and no documentary evidence was submitted by Petitioner.  (Doc. 14, Ex. C at Section III.).

The DHO found Petitioner guilty of charged  offense, namely engaging in a sexual act, Code 205, and sanctioned Petitioner to forty-five (45) days disciplinary segregation, twenty-seven (27) days loss of good conduct time.  (*Id.* at pp. 8-9 ).  Petitioner also lost visiting privileges for one (1) year.  (*Id.*, p. 3).

Petitioner claims that the disciplinary hearing violated his rights since the DHO finds inmates guilty in "99.9 percent of cases" brought before him.  (Doc. 16, p. 4).[18]  Petitioner also claims that there was not sufficient evidence to support the charge of which the DHO found him guilty since he was fully clothed and did not expose himself, that the DHO's decision was arbitrary and

---

[18]In his memo attached to his Habeas Petition, Petitioner also states that the DHO finds inmates guilty in "99.9% percent of cases" before him. (Doc. 1, memo, p. 2).  Petitioner did not offer any evidence to support this claim in either this case or his previous case, 05-1092.

capricious, and violated due process since two of his witness were not allowed to testify that he had his clothes on.  Petitioner also asserts that the sanctions imposed by the DHO were excessive since he was charged with the incorrect offense code.

Prior to Petitioner appearing before the DHO for his Discipline Hearing, he was advised of his rights.  As stated, he was given advance written notice of the incident report by receiving a copy of it on March 8, 2005.  (Doc. 14, Ex. , p. 1).  The DHO hearing was held on March 21, 2005, and Petitioner indicated that he waived his right to a staff representative.  Petitioner requested a witness (inmate McDade) and his witness was called and testified as follows:

> I was with everybody.  I could not see him [Petitioner] or her [Mrs. Feger].
> There was a wall between me and her.  I have no idea what was going on."

(*Id.*, p. 2,  ¶ III. C. 2.).  Petitioner was also advised of his rights at the DHO hearing.  Petitioner denied the charge (Offense Code 205) and stated that he was clothed and did not expose himself on the day in question.  (*Id.*, p. 1).

After reviewing the evidence, the DHO found that Petitioner committed the prohibited act of engaging in a sexual act, in violation of BOP Code 205.  (*Id.*, p. 2, ¶ V.).[19]  The DHO, after finding the Petitioner guilty of the stated charged offense, imposed the aforementioned sanctions. (*Id.* at p. 3).  Petitioner was given a copy of the DHO Report on March 28, 2005.  (*Id.* at p. 3). Petitioner was advised of his right to appeal the DHO's finding through the BOP's administrative remedy process. (*Id.*, ¶ VIII.).  As stated, the Respondent does not contest the Petitioner's claim that

---

[19]Since the specific evidence upon which the DHO relied to find Petitioner guilty of the stated  offense is contained in the DHO hearing report, Doc. 14, Ex. C, DHO Report, pp. 2-3, ¶'s III.- V., we shall not reiterate it herein.

he exhausted these remedies prior to instituting the present action.

### 3. DHO Due Process.

While extreme limitations on the due process rights that arise from the Fourteenth Amendment have been imposed by the Supreme Court in *Sandin v. Connor*, 515 U.S. 472 (1995), the applicability of those protections to matters where an inmate is faced with the loss of good time credit was left undisturbed.  We must therefore evaluate the disciplinary proceedings in this context.[20]

Petitioner, as stated, essentially makes two claims.  First, Petitioner contends that he was deprived of his due process rights since the evidence was not sufficient to support the charged offense due to the undisputed facts that he was fully clothed and did not expose himself, since  the DHO finds inmates guilty 99.9% of the time and,  since the DHO disallowed the testimony of two (2) of his witness, *i.e.* inmates Watkins and Mitchell, who would have substantiated his contention that he was fully clothed sitting in the law library.  (Doc. 16, p. 3).  As discussed above, we have found no merit to this claim since the fact to which these witnesses would have testified was not disputed and not the basis of the DHO's guilty finding.  Second, Petitioner claims that the sanctions imposed by the DHO were excessive.

The March 7, 2005 Incident Report was  timely received by Petitioner on the day after it it was issued and within 24 hours of the day the incident in question occurred.  This was within the required 24 hours as mandated by his due process rights and BOP policy.  (Doc. 14, Ex. B,  p. 1).

---

[20]The BOP's guidelines for inmate disciplinary proceedings are found under 28 C.F.R. §541.10, *et seq.*, and we shall not reiterate them herein.   *See also* Doc. 14, pp. 4-6.

It is undisputed that BOP policy, namely 28 C.F.R. §541.17(a), requires that the inmate be given advance written notice of the charges against him no less than 24 hours.  On March 9, 2005, Petitioner had his UDC hearing, and he was advised that the incident report was being referred to the DHO for a hearing.  As mentioned, the DHO hearing was held on March 21, 2005.

What is disputed in this case is whether there was sufficient evidence that the Petitioner was guilty of the charged offense and whether the DHO imposed excessive sanctions.

As Respondent states, Petitioner was given the chance to request witnesses, and he did so, *i.e.* inmate McDade.  Respondent correctly indicates that according to Petitioner's own admissions (Doc. 16, pp. 6-7), two other witnesses, inmates Hicks and Bingham, were not readily located, and Petitioner waived his right to call them.  (Doc. 14, p. 5).  In fact, the record shows that Petitioner waived his right to call inmates Hicks and Bingham.  (Doc. 14, Ex. D).  The DHO Report, Doc. 14, Ex. B, p. 2, indicates that  witness McDade was  called and testified.  Clearly, inmate McDade's stated testimony does not prove that Petitioner did not commit the charged offense and it does not refute the evidence against Petitioner.  In fact, McDade  stated that he could not see Petitioner and Mrs. Feger, and he did not know what Petitioner was doing (at the relevant time), and he did not know what Mrs. Feger was doing.  Nor does McDade's testimony controvert the eyewitness account of Mrs. Feger.  The DHO Report indicates that Petitioner did not present any documentary evidence.

Petitioner, in his Traverse, states that he was not properly charged with a Code 205 offense and the evidence was insufficient to find him guilty of such offenses since he never exposed himself, lowered his pants or had his hands in his pants.  (Doc. 16, p. 9).  Petitioner states that he

16

was charged with an offense which is only charged against inmates having sex with other inmates. (*Id*.).  As mentioned, Petitioner states, without any support, that even though there was no evidence that he exposed himself and he was fully clothed, he was charged with the more severe offense since he was being retaliated against for his complaints about prison staff.  Petitioner claims that he should have been charged with a 499 series offense for disruptive conduct, which is a low moderate category offense.  (Doc. 17, Ex. 8).   We find no merit to Petitioner's claims, since there clearly was a victim, *i.e.* Mrs. Feger, and since Mrs. Feger's eyewitness rendition of the incident clearly supported the charged offense.[21]

While Petitioner claims to have been charged with a more severe offense due to retaliation, he does not support this claim with any evidence.  Further, the DHO did consider Petitioner's claim that  he was fully clothed and did not expose himself, but he found the eyewitness rendition of the facts from Mrs. Feger that she saw him looking at her in with his hands on his penis, and she saw his visible  erect penis protruding from his grey sweat pants.  Thus, she stated that she could clearly see he had an erect penis with his hands on it.  (Doc. 14, Ex. C, p. 2, ¶ V.).  Notwithstanding the facts that Petitioner did not remove his clothing or expose himself, there was clearly enough evidence to find him guilty of the charged offense, engaging in a sexual act.  Therefore, the evidence upon which the DHO relied was more than ample to support his guilty finding.  (*Id*., ¶ V.).

_____

[21]We note that in Petitioner's prior habeas case (05-1092), he raised essentially the same due process claims, and the Court found no merit to them.

There is no evidence contained in the record that the reason why Petitioner was charged with a more severe Code 205 offense was due to the stated retaliation against Petitioner by the prison staff.  Petitioner only offers his unsubstantiated averment as support for his contention. Secondly, the Petitioner claims that there was not sufficient evidence presented at the DHO hearing to support the charge against him.  Petitioner states that he did not remove his clothing and he did not expose himself.  However, as discussed, there was more than ample evidence to show that Petitioner engaged in a sexual act despite being fully clothed.  As the DHO stated, "Levi's engaging in a sexual act in view of others (female staff in this case), hampers the ability of that staff member to effectively perform her duties." (Doc. 14, Ex. C, p. 3).   Thus, we find no merit to Petitioner's assertion that the evidence was not sufficient to prove that he was responsible for engaging in a sexual act.  We also find that the DHO pointed to the specific evidence upon which he relied to meet the greater weight of the evidence standard.  (Doc. 14, Ex. C, pp. 2-3).

As explained in detail by the DHO, the evidence upon which he relied was not vague or arbitrary, nor was it insufficient, as Petitioner claims.   We agree with Respondent that the greater weight of the evidence supported the DHO's decision that Petitioner was guilty of the charged offense.

Due process requires that the prisoner receive written notice of the charges against him no less than twenty-four (24) hours before the hearing;[22] that the prisoner be given a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken;

---

[22]The 24 hours advance notice must be made before the inmate's appearance in front of the DHO.  28 C.F.R. §541.17(a).

that the prisoner be afforded a qualified right to call witnesses and present documentary evidence in his own defense; and that an illiterate inmate be entitled to help from a fellow inmate. *Wolff v. McDonnell*, 418 U.S. 539 at 564-571 (1974).  We agree with Respondent that the requirements of *Wolff* were met in this case.

Petitioner was provided with written notice of the charge on March 8, 2005 when he was given a copy of the Incident Report.  (Doc. 1, Ex. B, Incident Report).  As the DHO hearing was convened on March 21, 2005, Petitioner was afforded notice well within the requisite twenty-four-hour period before the DHO hearing.  Petitioner was also afforded the right to call witnesses, and called inmate McDade. Petitioner waived his right to call Hicks and Bingham.  DHO Farley, an impartial officer, conducted the hearing and articulated the basis for his findings in his DHO Report.  (*Id. at Ex. C,* DHO Report).  As to the last requirement under *Wolff*, Petitioner was afforded the right to a staff representative at his hearing, and he waived this right.

Additionally, the record must be supported by some evidence.  *Superintendent v. Hill*, 472 U.S. 445 (1985).  "This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' *United States ex rel. Vajtauer v. Commissioner of Immigration at Port of New York*, 273 U.S. 103, 106 (1927).  Ascertaining whether this standard is satisfied does not require exhaustion of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455, 456.  (Citations omitted).  "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of the prison administrators that have

19

some basis in fact." *Id.* at 456.

Prior to the DHO hearing, Petitioner was advised of his rights.  During the course of the disciplinary hearing, the DHO heard testimony from the Petitioner, who indicated that he did not expose himself, he was fully clothed and that  the complainant had a vendetta against him.  The DHO relied upon the written Incident Report and investigation.   There was no documentary evidence listed in the DHO Report at ¶ III. D.  The DHO found that, despite Petitioner's testimony and despite Petitioner's claim that he did not remove his clothes and expose himself on the day in question, Petitioner did look at Mrs. Feger in a lustful manner with his hands on his erect penis in his grey sweat pants.  Thus, the DHO found that Petitioner was responsible for engaging in a sexual act based on the evidence as discussed above.  Further, we find Petitioner's argument that there was insufficient evidence due to the undisputed facts that he did not remove his pants and expose himself to be completely baseless.  Rather, Petitioner's conduct as charged and witnessed by Mrs. Feger was the basis of the DHO's finding, and this was clearly substantiated by the evidence. Petitioner's claim that he was denied the  testimonial evidence from inmates Hicks and Bingham by the DHO  in violation of his due process rights is also unsupported, as stated above.

Petitioner ignores the fact that, according to the Incident Report, he was not charged with exposing himself or engaging in a sex act with another inmate.  Therefore, we find no merit to the arguments of Petitioner that he was charged with a more severe offense for retaliatory reasons, that there was insufficient evidence to find him guilty of the charge and that he was deprived of his due process rights.  We find that there was sufficient evidence for the DHO's determination that the Petitioner engaged in a sexual act.

Accordingly, we do not find any merit to Petitioner's due process claims.

### 4. Sanctions Imposed.

Finally, we agree with Respondent that Petitioner's sanctions imposed by the DHO were neither arbitrary nor capricious.  The sanctions were also within the BOP's policy for the severity of the prohibited act of which Petitioner was found guilty.  (Doc. 14, pp. 6-7).

The BOP regulations provide the following sanctions for a Code 205 engaging in sexual act offense:

> B.    Forfeit earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).

> B.1   Disallow ordinarily between 25 and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).

> D.    Disciplinary segregation (up to 30 days).

> F.    Withhold statutory good time.

> G.    Loss of privileges: ... .

28 C.F.R. § 541.13, Prohibited Acts and Disciplinary Severity Scale, p. 583.

Further, since Petitioner's March 2005 conviction was his second violation of a Code 205 offense (the December 2004 violation was the first), Petitioner received 45 days disciplinary segregation, which under the regulations is permitted as a sanction for a repetition of prohibited acts within the same category.  *See* 28 C.F.R. § 541.13, Table 5, p. 588.

21

We agree with Respondent (Doc. 14, p. 7) that Table 3 of 28 C.F.R. § 541.13 allows for the exact sanctions which the DHO imposed on Petitioner for his high severity offense.  As stated, Table 5 of the regulations allowed for the sanction of 45 days disciplinary segregation due to the repetitive nature of Petitioner's offense.

We therefore agree with Respondent that Petitioner's stated sanctions for his Code 205 violation were within the BOP regulations.

The DHO also documented his reasons to impose the stated sanctions for the offense, particularly due to the commission of the charged sexual offense by the Petitioner in view of female staff.  (Doc. 14, Ex. C, p. 3, DHO Report, ¶ VII.).

## III. Recommendation.

Based on the foregoing, we respectfully recommend that the Petitioner's Habeas Corpus Petition **(Doc. 1)** be denied.  Further, we recommend that Petitioner's amended habeas claims relating to the conditions of his SHU confinement and the length of his SHU confinement be dismissed since they are not corre habeas claims. (Doc. 7).  We also recommend that Petitioner's second Motion for Preliminary Injunction/Temporary Restraining Order **(Doc. 34)** be denied.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated:  January 19, 2006**

22

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNARD S. LEVI,                           :      CIVIL ACTION NO. **1:CV-05-1533**
                                           :
             Petitioner                    :      (Judge Rambo)
                                           :
         v.                                :      (Magistrate Judge Blewitt)
                                           :
RONNIE HOLT, WARDEN,                       :
                                           :
                                           :
             Respondent                    :

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

Report and Recommendation dated **January 19, 2006.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

23

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**s/Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: January 19, 2006**